**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 6:15-cr-221-Orl-37DAB

JULIAN BENSCHER,

    Defendant.

**ORDER**

This cause is before the Court on the following:

(1) Defendant Julian Benscher's Motion to Dismiss Counts 1, 2, 3, and 4 (Doc. 35), filed December 16, 2015;

(2) United States' Omnibus Response to Defendant's Motions to Dismiss and Motion in Limine to Exclude 404(b) Evidence (Doc. 46), filed January 11, 2016; and

(3) Defendant Julian Benscher's Omnibus Reply in Further Support of Motions to Dismiss and Motion in Limine (Doc. 49), filed January 19, 2016.

**BACKGROUND**

On **October 1, 2015**, the Government initiated this tax fraud action—which concerns certain of Defendant Julian Benscher's filings for tax years **2006**, **2007**, and **2008**.[1] (Doc. 1.) Specifically, the Indictment charges Defendant with violating:

---

[1] Defendant—a citizen of the United Kingdom ("**UK**") who resides in Windermere, Florida (*see* Doc. 14, 29; *see also* Doc. 9)—appeared before U.S. Magistrate Judge Thomas B. Smith for arraignment on October 29, 2015. (Docs. 4, 6, 15.) He pled "not guilty" and was released on an appearance bond. (Docs. 6–8.)

(1) **26 U.S.C. § 7206(1)** by, on or about **March 12, 2007**, "knowingly and willfully" making and subscribing U.S. Individual Income Tax Return, Form 1040, which falsely reported that, **in 2006**: (1) he had capital gains of $4,603.00 when he knew that his capital gains were "substantially more" than $4,603.00; and (2) he did not have "an interest in or signature or other authority over a financial account in a foreign country when he knew he had an interest in and authority over a bank account and a financial account at UBS AG ("**Foreign Account**") that was located in a foreign country and for which he was the beneficiary ("**Count 1**");

(2) **26 U.S.C. § 7206(1)** by, on or about **April 4, 2008**, "knowingly and willfully" making and subscribing U.S. Individual Income Tax Return, Form 1040, which falsely reported that, **in 2007**: (1) he had interest income if $0 when he knew that his interest income was "substantially more" than $0; and (2) he did not have "an interest in or signature or other authority over a financial account in a foreign country when he knew he had an interest in and authority over the Foreign Account ("**Count 2**");

(3) **26 U.S.C. § 7206(1)** by, on or about **March 30, 2009**, "knowingly and willfully" making and subscribing U.S. Individual Income Tax Return, Form 1040, which falsely reported that, **in 2008**: (1) he had total income of -$500,963.00 when he knew that his total income was "substantially more" than -$500,963.00; and (2) he did not have "an interest in or signature or other authority over a financial account in a foreign country when he knew he had an interest in and authority over the Foreign Account ("**Count 3**"); and

(4) **31 U.S.C. §§ 5314 and 5322(a)** by, on or about **June 30, 2008**, knowingly and willfully failing to file with the U.S. Department of the Treasury ("**Treasury Department**") a Report of Foreign Bank and Financial Account on Form TD F 90-22.1 ("**TD F Form**"), which was required by 31, C.F.R. §§ 103.24 and 103.27, disclosing that Defendant had a financial interest in, and signature and other authority over, a bank, securities, and other financial account in a foreign country, which had an aggregate value of more than $10,000 during the **calendar year 2007** ("**Count 4**").

(Doc. 1 (emphasis added).)

In December 2015, Defendant filed a motion *in limine* (Doc. 33) and three motions to dismiss the Indictment (Docs. 32, 34, 35.) The Government filed an Omnibus Response (Doc. 46), and Defendant replied (Doc. 49). After considering the parties'

arguments at a hearing on **January 21, 2016**, the Court: reserved ruling on Defendant's request for dismissal of all four counts as time-barred (Doc. 35), and denied Defendant's remaining motions from the bench (Docs. 32–34). (*See* Doc. 51.)

Defendant seeks dismissal of Counts 1 through 3 of the Indictment based on expiration of a six-year statute of limitations ("**SOL**")—26 U.S.C. § 6531(1). (Doc. 35.) He seeks dismissal of Count 4 based on a five-year SOL—18 U.S.C. § 3282(a). (*See* Doc. 49.) The Government argues that these SOLs did not expire before it initiated this criminal proceeding on October 1, 2015, because the Government is entitled to several tolling periods based on 18 U.S.C. § 3292 and *In re Possible Violations of Title 31, United States Code, Sections 5314 and 5322, Title 31, Code of Federal Regulations, Section 103.24, and Title 26 United States Code, Section 7206(1)*, 6:10-mc-143-MSS-KRS ("***MC Action***"). (*See* Doc. 45, pp. 10–14.)

## THE *MC ACTION*

On **December 14, 2010**, the Government filed the *MC Action ex parte*, the Honorable Mary S. Scriven was assigned to the action, and it was maintained under seal until **December 23, 2015**. (*See MC Action*, Docs. 4, 9, 14, 18, 22, 26.) The Government filed five tolling applications in the *MC Action*, and each application was supported by an affidavit from a Special Agent for the Internal Revenue Service ("**IRS**"), Criminal Investigations—Annette Waldon ("**Agent Waldon**"). (*See* Doc. 46-2, pp. 6–16 ("**Second Aff.**"); Doc. 46-3, pp. 26–36 ("**Third Aff.**"); Doc. 46-4, pp. 25–37 ("**Fourth Aff.**"); Doc. 46-5, pp. 24–36 ("**Fifth Aff.**").) As summarized below, all of the Affidavits related similar facts concerning the events that triggered the Government's investigation of Defendant, the grand jury proceedings, and the Government's official requests to the Republic of Ireland ("**Ireland**"), the British Virgin Islands ("**BVI**"), and the UK.

**A.     Union Bank of Switzerland ("UBS") Investigation**

First, each affidavit provides a summary of the Government's criminal investigation of the "cross-border business" of UBS, which sought to evade U.S. financial reporting requirements by using sham entities and nominee account holders to shield the identities of U.S. taxpayers who were the true beneficial owners of UBS accounts. (*See* Doc. 46-2, pp. 7–9.) In **February 2009**, UBS entered a deferred prosecution agreement ("**DPA**") and disclosed to the Government the identities of 250 UBS clients—including Defendant—"who participated cross-border transactions that were intended to defraud the IRS." (*See id.* at 9, 19.)

**B.     The Grand Jury Investigation**

Each affidavit further advises that a federal Grand Jury investigation was opened in this District in **August 2009** ("**GJ Investigation**"), which focused on Defendant's possible violations of: (1) the foreign account disclosure requirements set forth in Title 31, United States Code, §§ 5314 and 5322 ("**Title 31 Offenses**"); and (2) the income reporting requirements set forth in Title 26, United States Code § 7206(1) ("**Title 26 Offenses**"). (Doc. 46-2, pp. 13–14.) In her Second, Third, and Fourth Affs., Agent Waldon represented that the GJ Investigation focused on **tax years 2003 through 2007**, but in her Fifth Aff., she advised that the GJ Investigation was focused on **tax years 2003 through 2008**. (*See* Doc. 46-5, p. 31.)

**C.     Defendant's Financial Ties in the UK, Ireland, and BVI**

According to Agent Waldon, in **July 2002**, Defendant formed a company called Sherwood Investments Overseas, LTD ("**SIO**") in the British Virgin Islands ("**BVI**"). Upon formation: SIO became the nominal account holder for several accounts at UBS ("**UBS Accounts**"), Defendant was identified to UBS as the sole beneficial owner of

4

such accounts, and Defendant then controlled the UBS Accounts. (*See id.* at 9–10.) SIO engaged in "extensive securities trading" and owned a large orchid farm—Sherwood Farms, Inc. ("**Sherwood**"). Sherwood—which was located near Defendant's Florida residence—took several large loans from Apollo and SIO. (*See* Doc. 46-2, pp. 10–11.) In addition, Apollo financed certain investments in U.S. brokerage accounts held by Sherwood. (*See id.* at 11.) On **January 15, 2010**, Sherwood filed for Chapter 11 bankruptcy in this District—*In re: Sherwood Farms, Inc.*, No. 6:10-bk-578-KSJ. (*See id.* at 11; Doc. 49, p. 3.) Agent Waldon further averred that, from **2004 through 2007**, an entity located in the Republic of Ireland ("**Ireland**")—Olympia Capital Ireland, Ltd. ("**Olympia**")—transferred more than $20 million into UBS Accounts. (*Id.* at 10.) In particular, Agent Waldon noted a transaction by Olympia with an entity located in BVI— "(Client Account Pentagon Apollo, Ltd.)" ("**Apollo**"). (*See id.* at 10, 12.)

D.   **Official Requests to the UK, Ireland, and the BVI**

In her Affidavits, Agent Waldon described the Government's "official requests" to Ireland, BVI, and the UK, which sought assistance in obtaining evidence believed to be located in those countries and believed to be pertinent to the Title 31 and Title 26 Offenses. (*See* Docs. 46-2, 46-3, 46-4, 46-5.) In her Second Aff., Agent Waldon described an initial request seeking Ireland's assistance in obtaining records from Olympia and an interview of an Olympia representative ("**First Request**"). (*See* Doc. 46-2, p. 12; *see also id.* at 28, n.3.) In her Third Aff., Agent Waldon described an additional request to Ireland—which the Government sent almost three months after Ireland's response to the First Request ("**Supp. Request**")—seeking records related to twelve specified Olympia transactions and a specified AIB International Banking Services ("**AIB**") account. (*See* Doc. 46-3, pp. 35–38.) Agent Waldon also described an

official request made on **July 18, 2011**, seeking assistance from the UK in obtaining evidence and interviews concerning Pentagon Capital Management Plc, "a number of companies within the" UK that Defendant operated, and related bank accounts and records—including AIB records ("**UK Request**"). (*Id.*)

In her Fourth Aff., Agent Waldon advised that the IRS had issued a new request to BVI on **July 15, 2011** ("**BVI Request**"), which BVI responded to on two different dates—the final one being **February 27, 2012**. (*See* Doc. 46-4, pp. 35–36.) In her Fifth Aff., Agent Waldon advised that in **August and September of 2014**, the UK finally responded to the UK Request by providing responsive "witness statements and documents." (*See id.* at 33–34.)

E.   **Judge Scriven's Orders**

After denying the Government's initial application (*see* Doc. 46-1), Judge Scriven granted four subsequent applications to suspend the SOLs—Doc. 46-2 ("**Second App.**"), Doc. 46-3 ("**Third App.**"), Doc. 46-4 ("**Fourth App.**"), and Doc. 46-5 ("**Fifth App.**"). These applications were granted by the following Orders:

(1)   an Order dated December 28, 2010 ("**2010 Order**"), granting the Second App. and suspending the SOL for **129 days**—from **August 6, 2010 through December 13, 2010**—based on the First Request and Ireland's response (*see* Doc. 46-2);

(2)   an Order dated August 23, 2011 ("**2011 Order**"), granting the Third App. and suspending the SOL for **98 days**—from **March 17, 2011 through June 23, 2011**—based on the Supp. Request and Ireland's response (*see* Doc. 46-3);

(3)   an amended Order dated April 23, 2013 ("**2013 Order**"), granting the Fourth App. and suspending the SOL for two periods—from **July 18, 2011 through February 13, 2013** (**574 days**) and from **July 18, 2011 through February 13, 2012** (**209 days**)—based respectively on the UK and BVI Requests, the BVI's responses, and the UK's initial response (*see* Doc. 46-4); and

> (4) a final Order dated November 5, 2014 ("**2014 Order**"), granting the Fifth App. and suspending the SOL for **289 days**—from **February 14, 2013 through November 30, 2013**—based on the UK's final responses to the UK Request (*see* Doc. 46-5).

For tax years 2005 through 2007 (which are at issue in Counts 1, 2, and 4 of the Indictment), Judge Scriven tolled the SOLs for a total of 1,090 days—August 6, 2010 to December 13, 2010, March 17, 2011 to June 23, 2011, and July 18, 2011 to November 30, 2013. Because Judge Scriven referenced tax year 2008 only in her 2014 Order, the SOL for the offense charged in Count 3 was tolled for only 289 days.

## LEGAL STANDARDS

Under § 3292, when a grand jury is impaneled to investigate "an offense" but has not yet returned and indictment, the United States may file an application—with "the district court before which" the grand jury "is impaneled to investigate" such offense ("**Pre-Indictment Court**")—for "suspension of the running of" the applicable SOL. *See* 18 U.S.C. § 3292(a)(1). The Pre-Indictment Court must grant the application if the United States establishes by a "preponderance of the evidence" that: (1) "an official request" has been made for such evidence; and (2) "it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country." *See id.* Generally, a "period of suspension" under § 3292 begins the date the "official request is made" and ends the date the foreign authority "takes final action" on the official request.[2] *See id.* § 3292(b). "The total of all periods of suspension" under § 3292 "shall not exceed three years," nor shall it "extend a period within which a criminal case must be initiated for more than six months if all foreign

---

[2] An "official request" is "a letter rogatory, a request under a treaty or convention, or any other request for evidence" made to a foreign court or authority by the United States. *See* 18 U.S.C. § 1382(d).

7

authorities take final action before such period would expire without regard to [§ 3292]." *Id.* § 3292(c).

In 2003, the U.S. Court of Appeals for the Eleventh Circuit held that § 3292 applications may be filed *ex parte. See United States v. Torres*, 318 F.3d 1058, 1061 (11th Cir. 2003); *see also United States v. Bohn*, 281 F. App'x 430, 434 (6th Cir. 2008) (agreeing with *Torres* and holding that an *ex parte* § 3292 proceeding does not violate Due Process). In 2004, the Eleventh Circuit explained that § 3292's "preponderance of the evidence standard" simply requires the "trier of fact to believe that the existence of a fact is more probable than its non-existence." *United States v. Trainor*, 376 F.3d 1325, 1332–32 (11th Cir. 2004). The *Trainor* Court instructs that this standard is met with evidence bearing "some indicia of reliability" such as "a sworn or verified application containing the necessary factual information, testimony by Government officials, affidavits, declarations, exhibits, or other materials of evidentiary value" including hearsay. *Id.* at 1334–35. The *Trainor* Court further instructs that—so long as the United States puts forward "*some* reliable evidence" supporting its  § 3292 application—the tolling decision of the Pre-Indictment Court should be given "great deference" by reviewing courts. *See id.* (reversing the Pre-Indictment Court's tolling decision only because it was no based on evidence, but on the government's *unsworn* recitations and a mere copy of an "official request").

**ANALYSIS**

Defendant contends that the tolling periods in the 2011, 2013, and 2015 Orders should not be given effect because: (1) the foreign evidence sought by the Government in its official requests is not "necessary" to prosecution of Defendant; and (2) the Government did not file the Third, Fourth, and Fifth Apps. in "good faith". (*See* Doc. 49,

pp. 1–2; *see also* Doc. 35.) In contrast, the Government argues that the SOLs should be tolled pursuant to § 3292 for the time periods specified by Judge Scriven in her 2010, 2011, 2013, and 2014 Orders. (*See* Doc. 46, pp. 10–13.)

The following tables summarize the parties' respective temporal positions concerning SOL accrual and expiration dates for each Count.

**Defendant's Dates (w/o § 3292 Tolling)**

| Count | Accrual Dates (Date of Tax Filing) | SOL Dates |
|---|---|---|
| 1 | 3/12/07 | 3/12/13 |
| 2 | 4/4/08 | 4/4/14 |
| 3 | 3/30/09 | 3/30/15 |
| 4 | 6/30/08 | 6/30/13 |

(*See* Doc. 49, p. 1; *see also* Doc. 35, p. 3).

**Government's Dates (w/ § 3292 Tolling)**

| Count | Accrual Dates (Tax Filing Due Date) | Original SOL | Tolled SOL |
|---|---|---|---|
| 1 | 4/15/07 | 4/15/13 | 4/15/16 |
| 2 | 4/15/08 | 4/15/14 | 4/15/17 |
| 3 | 4/15/09 | 4/15/15 | 10/15/15 |
| 4 | 6/30/08 | 6/30/13 | 6/30/16 |

(*See* Doc. 46, p. 13). Because the Government initiated this action approximately six months *after* both Defendant's SOL expiration dates and the Government's original SOL dates, to avoid dismissal based on the applicable SOLs, the Government must establish that the SOLs are tolled at least: 933 days for Count 1, 823 days for Count 4, 535 days for Count 2, and 185 days for Count 3.[3]

---

[3] The parties' disagreement concerning the date the SOL accrued for each Count (*compare* Doc. 35, p. 3, n.1 (arguing that the accrual date is the date form was filed), *with* Doc. 46, p. 13 (providing tax filing deadline for accrual date)) is not dispositive of the SOL issues presented, and the Court does not resolve the issue. Nonetheless, for purposes of discussion, the Court uses the Defendant's accrual dates in this Order.

9

As an initial matter, the Court rejects Defendant's arguments that § 3292 tolling is contingent on showing that the foreign evidence sought is "necessary" and that the Government's § 3292 tolling requests were made in "good faith." Just four years ago, the Eleventh Circuit emphasized that a court's § 3292 decision depends on only two inquiries: "(1) whether an official request was made; and (2) whether that official request was made for evidence that reasonably appears to be in the country to which the request was made." *See United States v. Broughton*, 689 F.3d 1260, 1273 (11th Cir. 2012) (limiting its appellate review to these discrete issues). Upon satisfaction of these two requirements, the SOL "*shall* be suspended." *Id*. Thus, the Court is not persuaded that the Eleventh Circuit would engraft "necessary evidence" or "good faith" requirements on § 3292.[4]

Focusing solely on the two *Broughton* questions and applying *Trainor*'s evidentiary requirement and standard of review, the Court finds that the SOLs are due to be tolled for the periods established by Judge Scriven's Orders in the *MC Action*. First, the record is clear—and Defendant does not dispute—that the Government made official requests to Ireland, the BVI, and the UK.[5] Second, Judge Scriven determined that the Government's official requests sought evidence—among other things, banking

---

[4] Further, in the primary case Defendant relies on—*United States v. DeGeorge*, 380 F.3d 1203 (9th Cir. 2004)—the Ninth Circuit rejected arguments that tolling was improper because the official request relied on by the government sought evidence that was already in the government's possession and was not material or essential to the tolled offenses. *Id*. at 1213. The *DeGeorge* court noted that even if it would be good policy to deny tolling under such circumstances, "Congress did not do so" in the text of § 3292. *Id.*

[5] Defendant also does not dispute that—as required by § 3292(a)(1): (1) the Government filed the *MC Action* in the appropriate Pre-Indictment Court; (2) the Indictment issued after the Government filed its applications in the *MC Action*; and (3) the SOLs for the charged offenses had not expired when the Government filed its applications in the *MC Action*.

records and witness statements—that reasonably appeared to be in Ireland, the BVI, and the UK. Further, Judge Scriven's determinations were founded upon evidence bearing the necessary indicia of reliability—Agent Waldon's Affidavits. Indeed, the *Trainor* Court observed that such affidavits bear an "important" indicia of reliability in that the oath insures that an affiant is impressed "with the solemnity and importance" of her words. *See id.* at 1332. Likewise, the *Broughton* Court recently held that an AUSA's sworn declaration concerning "the extent of the investigation" and "affirming the need for certain information in Costa Rica" was sufficiently reliable evidence to support tolling under § 3292. *See* 689 F.3d 1260, 1274 (11th Cir. 2012). Because the tolling periods established by Judge Scriven in the *MC Action* are sufficient to save the Indictment from dismissal based on the applicable SOLs, Defendant's motion is due to be denied.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 22, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record